1
2   *RAVEN, CLANCY & MCDONAGH, P.C.*
    3507 North Campbell Avenue, Suite 111
    Tucson, Arizona 85719
3   (520) 798-5233
    Fax: (520) 320-0717
4
5   CHRISTOPHER S. McDONAGH
    SBN 017367
    *cmcdonagh@ravlaw.com*
6   *Attorneys for SUSAN S. COURTNEY*

7                  **IN THE UNITED STATES BANKRUPTCY COURT**

8                      **FOR THE DISTRICT OF ARIZONA**

9   In re:                          )
                                     )   Chapter 7 Proceeding
10  CRAIG R. COURTNEY and JANINE     )
    CHERYL COURTNEY                  )   Case No. 4:19-bk-02612-SHG
11                                   )
                                     )   Adversary No.
12        Debtors.                   )
                                     )
13  ─────────────────────────────   )   **COMPLAINT (Objections to Discharge under**
                                     )   **11 U.S.C. §§ 523(a)(2), 523(a)(4) and 523(a)(19))**
14  SUSAN S. COURTNEY,               )
                                     )
15        Complainant,               )
                                     )
16  v.                               )
                                     )
17  CRAIG R. COURTNEY and JANINE     )
    CHERYL COURTNEY                  )
18                                   )
          Defendants/Debtors.        )

19        Plaintiff SUSAN S. COURTNEY, pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4)

20  and 523(a)(19) and Federal Rules of Bankruptcy Procedure, Rules 4004(a), 7001(4) and

21  7001(6), files this Complaint to object to the discharge of Plaintiff's claims against

22  Debtors CRAIG R. COURTNEY and JANINE CHERYL COURTNEY ("Debtors") and

23  to determine the dischargeability of particular debts as follows:

                              **JURISDICTION**
24
25  1.  This Court has jurisdiction under 28 U.S.C. § 157(b)(2)(I).

2.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) to determine the dischargeability of particular debts.

**GENERAL ALLEGATIONS**

3.  Defendants/Debtors CRAIG COURTNEY and JANINE COURTNEY, husband and wife, are residents of Pima County, Arizona, and at all material times have been acting on behalf of their marital community.

4.  On April 30, 2014, Plaintiff filed a Complaint against Debtors and other defendants in Pima County Superior Court Case No. C20142443 (the "Pima County Case").

5.  On June 27, 2016, Plaintiff filed a Motion to Amend Complaint with a copy of the proposed Amended Complaint against Debtors and other defendants in the Pima County Case.

6.  The Complaint in the Pima County Case included claims against Debtors CRAIG COURTNEY and JANINE COURTNEY for fraud, securities fraud, misappropriation of funds, corporate trust fund doctrine, and fraudulent transfers.

7.  At a settlement conference on July 7, 2016, Plaintiff reached a binding settlement of the Pima County Case with Debtors CRAIG COURTNEY and JANINE COURTNEY and two companies owned by the marital community of Debtor CRAIG COURTNEY and JANINE COURTNEY -- Magee Como Development Association, LLC ("Magee Como") and Courtney Realty and Investment Co. ("Courtney Realty").

8.  After the July 7, 2016 settlement conference, the settling parties conducted some further negotiation of the details of the settlement and entered a final, binding written Settlement Agreement on or about December 23, 2016 (the "Settlement Agreement").

9.  Pursuant to the Settlement Agreement, the settling parties agreed to a stipulated Judgment that was signed and entered by the Pima County Superior Court on January 6, 2017 (the "Judgment").

10.  The Judgment awarded Plaintiff SUSAN S. COURTNEY judgment against

Defendants CRAIG COURTNEY AND JANINE COURTNEY, jointly and severally, in the amount of One Hundred Ten Thousand and 00/100 Dollars ($110,000.00) (the "Craig and Janine Courtney Judgment"), plus interest at the statutory rate of four and one-half percent (4.5%) from and after July 31, 2016.

11.    In addition to the Craig and Janine Courtney Judgment, the Judgment awarded Plaintiff SUSAN S. COURTNEY judgment against Magee Como in the amount of $210,000.00 (the "Magee Como Judgment") and provided that the Craig and Janine Courtney Judgment is entitled to credits for payments on the Magee Como Judgment after the outstanding balance of the Magee Como Judgment has been paid down to $110,000.00.

12.    The outstanding balance of the Magee Como Judgment was never paid down to $110,000, and the outstanding balance of the Magee Como Judgment currently exceeds $110,000.00.

13.    The Judgment provided: "Starting on January 7, 2018 (and on the 7th of each month thereafter), Craig Courtney and Janine Courtney, jointly and severally, shall make payments to Plaintiff on the Craig and Janine Courtney Judgment in the amount of Two Thousand Five Hundred and 00/100 dollars ($2,500.00) per month until all amounts owed under the Craig and Janine Courtney Judgment are paid in full. Any missed payment after fourteen (14) days shall accelerate the full remaining balance of the Courtney Judgment."

14.    Defendants CRAIG COURTNEY AND JANINE COURTNEY did not make any of the $2,500 per month installment payments on the Craig and Janine Courtney Judgment.

15.    Pursuant to the Judgment, on January 22, 2018, the full remaining balance of the Craig and Janine Courtney Judgment was accelerated due to the failure to make the installment payment due January 7, 2018.

**PARTIAL COLLECTION ON**

## THE CRAIG AND JANINE COURTNEY JUDGMENT

16. To evidence the amount owed under the Craig and Janine Courtney Judgment, Defendants CRAIG COURTNEY and JANINE COURTNEY executed a Promissory Note, dated July 31, 2016, payable to Plaintiff SUSAN COURTNEY in the original principal sum of $110,000.00, with interest thereon at the rate of four and one-half percent (4.5%) per annum from and after July 31, 2016 (the "Courtney Note").

17. The amounts owed under the Craig and Janine Courtney Judgment and the Courtney Note were secured by a Deed of Trust, Assignment of Rents and Security Agreement, dated July 31, 2016, from Cornerstone Investment Company ("Cornerstone") in favor of Plaintiff, which was duly recorded in the Office of the Pima County Recorder on December 29, 2016 at Sequence 20163640888 (the "Cornerstone Deed of Trust") as a lien on the real property identified by Pima County Tax Parcel Number 126-21-034K, legally described on Exhibit A to the Cornerstone Deed of Trust (the "Cornerstone Property").

18. Cornerstone defaulted on the Cornerstone Deed of Trust by failing to pay property taxes on the Cornerstone Property before delinquent as required by Section 4 of the Cornerstone Deed of Trust.

19. Defendants CRAIG COURTNEY and JANINE COURTNEY defaulted on the Craig and Janine Courtney Judgment by failing to make the monthly payments that were due on the 7th of each month, starting January 7, 2018.

20. Section 4 of the Judgment provides for Plaintiff to recover collection costs (including reasonable attorneys' fees) incurred by Plaintiff to collect upon or enforce the Judgment.

21. Section 10 of the Courtney Note provides: "In the event of any dispute arising out of this $110,000 Promissory Note, the prevailing party shall be entitled to its

reasonable attorneys' fees and expenses incurred (including such fees and expenses incurred before litigation or other proceedings are initiated and in disputes that do not result in litigation or other proceedings)."

22.    Due to the default of Defendants CRAIG COURTNEY and JANINE COURTNEY under the Craig and Janine Courtney Judgment and the Courtney Note, Defendants CRAIG COURTNEY and JANINE COURTNEY are liable for the following amounts that were incurred by Plaintiff to enforce and collect on the Craig and Janine Courtney Judgment and the Courtney Note: all costs, expenses and reasonable attorneys' fees incurred by Plaintiff (a) in any collection efforts and lawsuits brought by Plaintiff to collect amounts owed under the Craig and Janine Courtney Judgment, the Courtney Note and Cornerstone Deed of Trust, and (b) with respect to the trustee sale of the Cornerstone Property pursuant to the Cornerstone Deed of Trust (including $400.00 for a trustee sale guarantee, and attorneys' fees in a reasonable sum).

23.    Plaintiff exercised Plaintiff's right under the Cornerstone Deed of Trust to have the Cornerstone Property sold at a trustee sale.

24.    The Cornerstone Property was sold at a trustee sale on May 31, 2018 to Plaintiff.

25.    At the time of the May 31, 2018 trustee sale, the following amounts were owed to Plaintiff under the Craig and Janine Courtney Judgment:

   a.    The outstanding principal sum of $110,000.00;

   b.    Plus interest on the outstanding principal sum of $110,000.00 at the rate of four and one-half percent (4.5%) per annum from July 31, 2016 until May 31, 2018.  As of May 31, 2018, the accrued interest was $9,072.74.

   c.    Plus all costs, expenses and reasonable attorneys' fees incurred through May 31, 2018 by Plaintiff with respect to collection of amounts owed under the

Craig and Janine Courtney Judgment, the Courtney Note and the Cornerstone Deed of Trust, including but not limited to:

    1. All costs and expenses incurred by Plaintiff with respect to the trustee sale of the Cornerstone Property pursuant to the Cornerstone Deed of Trust (including but not limited to $400.00 for the Trustee Sale Guarantee and $560.00 paid to MK Consultants regarding the trustee sale); and

    2. Reasonable attorney's fees in the amount of $2,098.89 incurred by Plaintiff from August 1, 2017 through May 31, 2018 to enforce the Craig and Janine Courtney Judgment, the Courtney Note and the Cornerstone Deed of Trust and regarding the trustee sale.

26. The highest and winning bid at the May 31, 2018 trustee sale was a credit bid by Plaintiff in the amount of $70,201.00.

27. At the trustee sale, Plaintiff acquired the Cornerstone Property with Plaintiff's credit bid of $70,201.00.

28. On August 28, 2018, Plaintiff filed a deficiency action pursuant to A.R.S. § 33-814(A) in Pima County Superior Court Case No. C20184345 (the "Deficiency Action") to have the court determine the remaining balance owed under the Craig and Janine Courtney Judgment following the trustee sale of the Cornerstone Property.

29. Pursuant to A.R.S. § 33-814(A), the remaining balance owed under the Craig and Janine Courtney Judgment is an amount equal to the sum of the total amount owed to Plaintiff under the Craig and Janine Courtney Judgment/Courtney Note as of the date of the May 31, 2018 trustee sale, as determined by the court, less the fair market value of Plaintiff's interest in the Cornerstone Property on the date of the trustee sale as determined by the court or the sale price at the trustee's sale ($70,201.00), whichever is

higher, plus interest from and after the date of the May 31, 2018 trustee sale at the annual rate of four and one-half percent (4.5%) provided in the Craig and Janine Courtney Judgment, together with any costs and disbursements of the Deficiency Action.

30.   Plaintiff also seeks an award of Plaintiff's attorney's fees and costs incurred in the Deficiency Action, pursuant to the terms of the contracts as well as A.R.S. § 12-341.01.

## 2009 LOAN AND INVESTMENT

31.   The Pima County Case and resulting Craig and Janine Courtney Judgment arose from a loan and investment that Debtor CRAIG COURTNEY fraudulently induced Plaintiff to make in 2009.

32.   In late April 2009, Debtor CRAIG COURTNEY fraudulently induced Plaintiff SUSAN COURTNEY to lend and invest $137,500.00 with Debtor CRAIG COURTNEY's company, Magee Como (the "2009 Loan and Investment") as a loan and an investment in Unit 204 of Magee Center I Office Condominium Building, located at 2292 W. Magee Road, Tucson, Arizona 85742 (the "Magee Office Condo").

33.   The terms of the 2009 Loan and Investment are set forth in the Loan and Security Agreement, dated April 27, 2009 (the "Loan Agreement").

34.   On or about April 30, 2009, for value received, Magee Como executed a Note Secured by Deed of Trust, dated April 30, 2009, payable to Plaintiff SUSAN COURTNEY in the original principal sum of $137,500.00, with interest thereon at the rate of eight percent (8%) per year (the "2009 Note").

35.   The 2009 Note was secured by a Deed of Trust, dated April 27, 2009, which was duly recorded in the Office of the Pima County Recorder on May 19, 2009 at Docket 13561, Page 1873, Sequence 20090960370 (the "Magee Office Condo Deed of Trust").

36.   The Magee Office Condo Deed of Trust identified the beneficiaries of the Magee Office Condo Deed of Trust as Plaintiff SUSAN COURTNEY, as to a one-half interest, and Silvia Levkowitz, as Trustee of the Administrative Trust for the Revocable Trust of Joe and Silvia Levkowitz (the "Levkowitz Trust"), as to a one-half interest.

37.   The Magee Office Condo Deed of Trust secured the obligations of Magee Como under the 2009 Note and under the Magee Office Condo Deed of Trust.

### CONTROL OF MAGEE COMO BY CRAIG COURTNEY

38.   Defendant CRAIG COURTNEY was the sole manager of Magee Como since the company was formed in 2001.

39.   Defendant CRAIG COURTNEY was the only representative of Magee Como with whom Plaintiff SUSAN COURTNEY communicated regarding the 2009 Loan and Investment.

40.   The Loan Agreement, the 2009 Note and the Magee Office Condo Deed of Trust for the 2009 Loan and Investment were all signed by Defendant CRAIG COURTNEY as the "Managing Member" of Magee Como.

41.   Upon information and belief, all actions and omissions by Magee Como, its employees and/or agents referenced in this Complaint were under the direction and control of Defendant CRAIG COURTNEY as the "Managing Member" of Magee Como.

### CONFIDENTIAL RELATIONSHIP BETWEEN
### SUSAN COURTNEY AND CRAIG COURTNEY

42.   Defendant CRAIG COURTNEY is the brother of Plaintiff SUSAN COURTNEY.

43.   Defendant CRAIG COURTNEY is an experienced real estate broker and real

estate developer.

44. Defendant CRAIG COURTNEY is a licensed Arizona real estate broker (ADRE License No. BR003966000).

45. Defendant CRAIG COURTNEY is the designated broker for COURTNEY REALTY (ADRE License No. CO102242000).

46. Defendant CRAIG COURTNEY is experienced preparing agreements related to real estate and real estate loans (including purchase agreements, leases, deeds, promissory notes, and deeds of trust).

47. Before 2009, Plaintiff SUSAN COURTNEY had loaned money to Defendant CRAIG COURTNEY and/or to companies he controlled, which amounts had been repaid.

48. On a number of occasions before 2009, Defendant CRAIG COURTNEY had provided Plaintiff SUSAN COURTNEY with professional advice and assistance regarding real estate and secured real estate loans.

49. On a number of occasions before 2009, Plaintiff SUSAN COURTNEY had relied on the professional advice and assistance provided by Defendant CRAIG COURTNEY regarding real estate and secured real estate loans.

50. The professional advice and assistance that Defendant CRAIG COURTNEY had provided Plaintiff SUSAN COURTNEY regarding real estate and secured real estate loans had included preparing, reviewing and advising her regarding purchase contracts, leases and financing documents (e.g., promissory notes and deeds of trust).

51. Defendant CRAIG COURTNEY had also provided Plaintiff SUSAN

COURTNEY with advice and assistance regarding non-real estate contracts.

52.   Because Defendant CRAIG COURTNEY had provided this professional advice and assistance, Plaintiff SUSAN COURTNEY considered Defendant CRAIG COURTNEY to be a trusted professional advisor looking out for her best interests regarding real estate, legal and financing matters.

53.   When Defendant CRAIG COURTNEY solicited Plaintiff SUSAN COURTNEY to make the 2009 Loan and Investment, Plaintiff SUSAN COURTNEY considered Defendant CRAIG COURTNEY to be a trusted professional advisor looking out for her best interests regarding real estate, legal and financing matters, as well as trusting him as her brother.

54.   With respect to the 2009 Loan and Investment, Plaintiff SUSAN COURTNEY considered Defendant CRAIG COURTNEY to be a trusted professional advisor looking out for her best interests regarding the transaction, as well as trusting him as her brother.

55.   Upon information and belief, Defendant CRAIG COURTNEY prepared or was responsible for the preparation of the Loan Agreement, Note and Deed of Trust for the 2009 Loan and Investment.

56.   Plaintiff SUSAN COURTNEY entrusted and relied upon Defendant CRAIG COURTNEY, as her trusted professional advisor and brother, to look out for her best interests regarding the 2009 Loan and Investment, including fully disclosing to her all material information that could affect her decision to enter into the transaction and preparing the Loan Agreement, Note and Deed of Trust for the 2009 Loan and Investment to accurately reflect the terms of the transaction as Defendant CRAIG

COURTNEY had explained it to Plaintiff SUSAN COURTNEY.

57.  Plaintiff SUSAN COURTNEY entrusted and relied upon Defendant CRAIG COURTNEY, as her trusted professional advisor and brother, to make sure the Loan Agreement, Note and Deed of Trust for the 2009 Loan and Investment accurately reflected the terms of the transaction as Defendant CRAIG COURTNEY had explained it to Plaintiff SUSAN COURTNEY.

58.  In reliance on her trust of Defendant CRAIG COURTNEY, as her trusted professional advisor and brother, Plaintiff SUSAN COURTNEY did not believe it was necessary for her to read in detail the Loan Agreement, Note and Deed of Trust for the 2009 Loan and Investment and that she could instead rely on the representations by Defendant CRAIG COURTNEY regarding the terms of the 2009 Loan and Investment transaction and the provisions of the 2009 Note, Deed of Trust and Loan Agreement.

59.  Plaintiff SUSAN COURTNEY entrusted and relied upon Defendant CRAIG COURTNEY, as her trusted professional advisor and brother, to act in good faith and exercise his authority as "Managing Member" of Magee Como to cause Magee Como fulfill its obligations under the Loan Agreement, Note and Deed of Trust for the 2009 Loan and Investment.

60.  Plaintiff SUSAN COURTNEY entrusted and relied upon Defendant CRAIG COURTNEY, as her trusted professional advisor and brother, to accurately and completely inform Plaintiff SUSAN COURTNEY regarding the financial condition of Magee Como and its intent and ability to fulfill its obligations under the Loan Agreement, Note and Deed of Trust for the 2009 Loan and Investment.

61. Plaintiff SUSAN COURTNEY entrusted and relied upon Defendant CRAIG COURTNEY, as her trusted professional advisor and brother, to notify Plaintiff SUSAN COURTNEY if Magee Como defaulted on, or was unable to fulfill, its obligations under the Loan Agreement, Note and Deed of Trust for the 2009 Loan and Investment.

## SOLICITATION OF THE 2009 LOAN AND INVESTMENT

62. In or about March or April 2009, Defendant CRAIG COURTNEY began asking his sister, Plaintiff SUSAN COURTNEY, to loan $275,000.00 to Defendants CRAIG COURTNEY and/or Magee Como.

63. Defendant CRAIG COURTNEY told Plaintiff SUSAN COURTNEY that her loan would be secured by a first position deed of trust on the Magee Office Condo.

64. Plaintiff SUSAN COURTNEY did not immediately agree to lend the money.

65. Defendant CRAIG COURTNEY then asked Plaintiff SUSAN COURTNEY more frequently and persistently to lend the money.

66. Defendant CRAIG COURTNEY called Plaintiff SUSAN COURTNEY frequently at her home, her cell phone and office, and appeared repeatedly at her office demanding to see her to ask her to lend the money.

67. Defendant CRAIG COURTNEY led Susan Courtney to believe that if Magee was not able to borrow the money, then Magee Como would lose the Magee Office Condo. This was an intentional misrepresentation of a material fact.

68. Susan only loaned the money because Defendant CRAIG COURTNEY kept asking and she wanted to help her brother.

69. Susan Courtney told Defendant CRAIG COURTNEY she would only loan the

money to Magee if she was fully secured so that she could recover her money from a foreclosure if Magee Como didn't repay her.

70. Defendant CRAIG COURTNEY promised Susan Courtney that he would make sure Susan's loan was repaid in full and that there would be no problem with her being repaid in full. This was an intentional misrepresentation of a material fact.

71. In deciding to make the loan to Magee in 2009, Susan Courtney relied on the representations and promises of Defendant CRAIG COURTNEY (as her older brother and a trusted advisor), and did not conduct her own analysis, regarding the value of the Magee Office Condo or regarding whether her loan to Magee Como was adequately secured.

72. Susan Courtney did not seek the advice of anyone other than her brother Craig when deciding to make the loan to Magee Como in 2009.

73. Defendant CRAIG COURTNEY's promise to make sure Susan's loan was repaid in full and that there would be no problem with her being repaid in full included or implied a promise that Defendant CRAIG COURTNEY, as managing member of Magee Como, would not take actions to impair the security for Plaintiff's loan or to decrease the chances that Plaintiff would be repaid in full.

74. Defendant CRAIG COURTNEY's promise to make sure Susan's loan was repaid in full and that there would be no problem with her being repaid in full included or implied a promise that Defendant CRAIG COURTNEY, as managing member of Magee Como, was going to make sure Magee Como honored the obligation under the Magee Office Condo Deed of Trust to pay property taxes for the Magee Office Condo.

75.   Defendant CRAIG COURTNEY told Plaintiff SUSAN COURTNEY that the Magee Office Condo was worth about $350,000.00.   This was an intentional misrepresentation of a material fact.

76.   Defendant CRAIG COURTNEY told Plaintiff SUSAN COURTNEY that because the Magee Office Condo was worth about $350,000.00, her loan would be more than adequately secured. This was an intentional misrepresentation of a material fact.

77.   The Magee Office Condo was worth significantly less than $350,000.00 at the time Defendant CRAIG COURTNEY told Plaintiff SUSAN COURTNEY it was worth about $350,000.00.

78.   Upon information and belief, Defendant CRAIG COURTNEY knew the Magee Office Condo was worth significantly less than $350,000.00 at the time he told Plaintiff SUSAN COURTNEY it was worth about $350,000.00.

79.   Plaintiff SUSAN COURTNEY would not have made the 2009 Loan and Investment if she had understood that the Magee Office Condo was worth significantly less than $350,000.00 at the time she made the loan.

80.   Defendant CRAIG COURTNEY showed Plaintiff SUSAN COURTNEY plans for future changes to be made to the nearby intersection of N. La Cholla Blvd. and W. Magee Road.

81.   Defendant CRAIG COURTNEY told Plaintiff SUSAN COURTNEY the future road and intersection improvements would make the Magee Office Condo even more valuable.

82.   Defendant CRAIG COURTNEY told Plaintiff SUSAN COURTNEY that his

plan was to sell the Magee Office Condo within about three years after the future road and intersection improvements were completed.

83. Defendant CRAIG COURTNEY told Plaintiff SUSAN COURTNEY that her loan would be an investment in the Magee Office Condo and that in addition to interest on the loan, she would receive part of the profits from the sale of the Magee Office Condo.

84. Defendant CRAIG COURTNEY told Plaintiff SUSAN COURTNEY that he wanted three years to pay back the loan, so there would be enough time for the future road and intersection improvements to be completed and then sell the Magee Office Condo at a profit, which would be shared with Plaintiff SUSAN COURTNEY.

85. Plaintiff SUSAN COURTNEY told Defendant CRAIG COURTNEY she could not afford to lend/invest $275,000.00.

86. Defendant CRAIG COURTNEY then asked Plaintiff SUSAN COURTNEY to lend half of that amount, i.e., $137,500.00.

87. Defendant CRAIG COURTNEY led Plaintiff SUSAN COURTNEY to believe that Magee Como or Defendant CRAIG COURTNEY would try to borrow $137,500.00 from Defendant CRAIG COURTNEY's mother-in-law, Sylvia Levkowitz, or her trust. This was an intentional misrepresentation of a material fact.

88. Defendant CRAIG COURTNEY did not tell Plaintiff SUSAN COURTNEY that Magee Como still owed Sylvia Levkowitz's trust (the Administrative Trust for the Revocable Trust of Joe and Silvia Levkowitz (the "Levkowitz Trust")) for a $225,000 loan from the Levkowitz Trust evidenced by promissory note dated July 18, 2008 (the

"2008 Levkowitz Loan"). This was an intentional misrepresentation and omission of a material fact.

89.    Plaintiff SUSAN COURTNEY relied on Defendant CRAIG COURTNEY to inform her if the Magee Office Condo was subject to any other liens.

90.    Defendant CRAIG COURTNEY did not tell Plaintiff SUSAN COURTNEY that the 2008 Levkowitz Loan was secured by a Deed of Trust on the Magee Office Condo, dated July 18, 2008, which was duly recorded in the Office of the Pima County Recorder on July 18, 2008 at Docket 13351, Page 1266, Sequence 20081390367 (the "2008 Levkowitz Deed of Trust"). This was an intentional misrepresentation and omission of a material fact.

91.    Plaintiff SUSAN COURTNEY did not know that the Magee Office Condo was encumbered by a deed of trust securing the 2008 Levkowitz Loan.

92.    Plaintiff SUSAN COURTNEY would not have made the 2009 Loan and Investment if she had understood that the Magee Office Condo was encumbered by a deed of trust securing the 2008 Levkowitz Loan.

93.    Defendant CRAIG COURTNEY did not adequately inform Plaintiff SUSAN COURTNEY that that the Magee Office Condo Deed of Trust that would be securing her 2009 Loan and Investment would also be securing a loan from the Levkowitz Trust and the negative effects that would have regarding the ability of Plaintiff to conduct a trustee sale of the Magee Office Condo or exercise other rights in case of a default by Magee Como.  This was an intentional misrepresentation and omission of a material fact.

94.    Plaintiff SUSAN COURTNEY would not have made the 2009 Loan and

Investment if she had understood that the Magee Office Condo Deed of Trust that would be securing her 2009 Loan and Investment would also be securing on an equal basis a loan from the Levkowitz Trust and the negative effects that would have regarding the ability of Plaintiff to conduct a trustee sale of the Magee Office Condo or exercise other rights in case of a default by Magee Como.

95.   From before the time Plaintiff loaned the $137,500 to Magee Como, Defendant CRAIG COURTNEY planned to have Magee Como disburse at least $105,000 of those funds to Defendant CRAIG COURTNEY and JANINE COURTNEY as an alleged loan from the Levkowitz Trust.

96.   Defendant CRAIG COURTNEY never disclosed to Plaintiff that Magee Como would disburse to CRAIG COURTNEY and JANINE COURTNEY any of the money that Plaintiff loaned Magee Como in April 2009. This was an intentional misrepresentation and omission of a material fact.

97.   From May to July 2009 Magee Como disbursed to CRAIG COURTNEY and JANINE COURTNEY approximately $112,015.50 of the money that Plaintiff loaned Magee Como in April 2009.

98.   Plaintiff Susan Courtney would not have made the 2009 Loan and Investment if she had known that CRAIG COURTNEY planned to use the loan funds for CRAIG COURTNEY and JANINE COURTNEY.

### MAKING OF THE 2009 LOAN AND INVESTMENT

99.   In late April 2009, Plaintiff SUSAN COURTNEY signed the Loan Agreement, the 2009 Note, and the Magee Office Condo Deed of Trust and paid $137,500.00 to

Magee Como.

100. The $137,500.00 for the 2009 Loan and Investment came from Plaintiff SUSAN COURTNEY borrowing those funds from her individual retirement account ("IRA").

101. If Plaintiff SUSAN COURTNEY did not pay back the loan from her IRA within the time period required by federal tax law, she could be subject to tax penalties by the Internal Revenue Service ("IRS").

102. It was critical to Plaintiff SUSAN COURTNEY that the 2009 Loan and Investment be adequately secured and not be a risky investment.

103. It was critical to Plaintiff SUSAN COURTNEY that Magee Como repay the 2009 Loan and Investment in time for her to pay back the loan from her IRA within the time period required by federal tax law, so she could avoid be subject to tax penalties by the IRS.

104. It was also critical to Plaintiff SUSAN COURTNEY that she be able to promptly foreclose on the Magee Office Condo through a trustee sale if Magee Como did not repay the 2009 Loan and Investment on time.

105. Defendants CRAIG COURTNEY and Magee Como knew that the $137,500.00 for the 2009 Loan and Investment came from Plaintiff SUSAN COURTNEY borrowing those funds from her IRA.

106. Defendants CRAIG COURTNEY and Magee Como knew that if Plaintiff SUSAN COURTNEY did not pay back the loan from her IRA within the time period required by federal tax law, she could be subject to tax penalties by the IRS.

107. Defendants CRAIG COURTNEY and Magee Como knew that it was important

to Plaintiff SUSAN COURTNEY that Magee Como repay the 2009 Loan and Investment in time for her to pay back the loan from her IRA within the time period required by federal tax law, so she could avoid be subject to tax penalties by the IRS.

108. Defendants CRAIG COURTNEY and Magee Como knew that it was also important to Plaintiff SUSAN COURTNEY that she be able to promptly foreclose on the Magee Office Condo through a trustee sale if Magee Como did not repay the 2009 Loan and Investment on time.

109. Defendant CRAIG COURTNEY led Plaintiff SUSAN COURTNEY to believe that Plaintiff's Note was being secured by a first position Deed of Trust lien on the Magee Office Condo and that, in case of a default by Magee Como under the Susan Courtney Note or Deed of Trust, Plaintiff alone would have authority to enforce Plaintiff's rights and remedies under the Magee Office Condo Deed of Trust (including conducting a trustee sale of the Magee Office Condo) without requiring the consent of the Levkowitz Trust. This was an intentional misrepresentation and omission of material fact.

110. Defendant CRAIG COURTNEY failed to inform Plaintiff SUSAN COURTNEY that, because Defendant CRAIG COURTNEY had written the Magee Office Condo Deed of Trust to secure both the Susan Courtney Note and the Levkowitz Note, it was not clear that, in case of a default by Magee Como under the Susan Courtney Note or Deed of Trust, Plaintiff alone would have authority to enforce Plaintiff's rights and remedies under the Magee Office Condo Deed of Trust (including conducting a trustee sale of the Magee Office Condo) without requiring the consent of

the Levkowitz Trust. This was an intentional omission of material fact.

111. In reliance on her trust of Defendant CRAIG COURTNEY, as her trusted professional real estate advisor and brother, Plaintiff SUSAN COURTNEY entered into the Loan Agreement and funded her 2009 Loan and Investment in reliance upon Plaintiff's understanding that Plaintiff's Note was being secured by a first position Deed of Trust lien on the Magee Office Condo and that, in case of a default by Magee Como under the Susan Courtney Note or Deed of Trust, Plaintiff alone would have authority to enforce Plaintiff's rights and remedies under the Magee Office Condo Deed of Trust (including conducting a trustee sale of the Magee Office Condo) without requiring the consent of the Levkowitz Trust.

112. In reliance on her trust of Defendant CRAIG COURTNEY, as her trusted professional real estate advisor and brother, Plaintiff SUSAN COURTNEY did not read in detail the Loan Agreement, Note and Deed of Trust for her 2009 Loan and Investment.

113. Plaintiff SUSAN COURTNEY would not have made the 2009 Loan and Investment if she had understood that that, in case of a default by Magee Como under the Susan Courtney Note or Deed of Trust, it was not clear that Plaintiff alone would have authority to enforce Plaintiff's rights and remedies under the Magee Office Condo Deed of Trust (including conducting a trustee sale of the Magee Office Condo) without requiring the consent of the Levkowitz Trust.

114. The Magee Office Condo Deed of Trust (on p.1) states: "(D) Notwithstanding anything stated herein to the contrary, any Beneficiary of this Deed of Trust may initiate,

at their sole and absolute discretion and without requiring any authorization from any other Beneficiary, a foreclosure of the security described herein upon the Trustor's default in any of the terms and conditions of the Beneficiary's Promissory Note or this Deed of Trust for the total amount described above, plus all accrued and unpaid interest, and expenses of foreclosure such that all Promissory Notes secured by this Deed of Trust shall be paid in full according to their terms."

115. The Loan Agreement, Deed of Trust and Defendant CRAIG COURTNEY's statements led Plaintiff SUSAN COURTNEY to believe that, in case of a default by Magee Como under the Susan Courtney Note or Deed of Trust, the Magee Office Condo Deed of Trust gave Plaintiff SUSAN COURTNEY the right to have the Magee Office Condo sold via a trustee's sale without the need to obtain the consent of the Levkowitz Trust or any other lender. This was an intentional misrepresentation and omission of material fact.

116. Plaintiff SUSAN COURTNEY relied on Defendant CRAIG COURTNEY, as her trusted professional advisor and brother, in believing that, in case of a default by Magee Como under the Susan Courtney Note or Deed of Trust, the Magee Office Condo Deed of Trust gave Plaintiff SUSAN COURTNEY the right to have the Magee Office Condo sold via a trustee's sale without the need to obtain the consent of the Levkowitz Trust or any other lender.

### DEFAULTS ON THE PROMISSORY NOTE AND DEED OF TRUST

117. The principal and all accrued interest on the 2009 Note was due and payable to Plaintiff SUSAN COURTNEY in full on or before April 30, 2012.

118. No payment of principal or interest on the 2009 Note was made to Plaintiff on or before April 30, 2012, and Magee Como defaulted on its payment obligations under the 2009 Note.

119. The 2009 Note provides: "Should interest not be so paid, it shall thereafter bear like interest as the principal, but such unpaid interest so compounded shall not exceed an amount equal to simple interest on the unpaid principal at the maximum rate permitted by law."

120. The amount of interest that had accrued from April 30, 2009 to the April 30, 2012 maturity date was $33,030.14.

121. Pursuant to the 2009 Note, that $33,030.14 in interest that was due on April 30, 2012 was compounded and added to the outstanding principal balance as of April 30, 2012.

122. With the addition of the compounded interest, the outstanding principal balance of the 2009 Note as of April 30, 2012 was $170,530.14, which amount continued to accrue interest at the rate of eight percent (8%) per year since April 30, 2012.

123. In addition, Magee Como was liable for additional costs under the terms of the Magee Office Condo Deed of Trust, including Plaintiff's costs and expenses in bringing a foreclosure lawsuit and appearing in and protecting the security of the Magee Office Condo Deed of Trust in United States Bankruptcy Court, District of Arizona Case No. 4:13-bk-00851-EWH (In Re 250 AZ, LLC, Debtor) (the "250 AZ, LLC Bankruptcy Case"), plus Plaintiff's costs to conduct the December 30, 2014 trustee sale of the Magee Office Condo.

**NON-PAYMENT OF PROPERTY TAXES**

124. Section 4 of the Magee Office Condo Deed of Trust required Magee Como, as Trustor: "To pay: before delinquent, all taxes and assessments affecting said property; . . . ."

125. On April 30, 2009, Defendant CRAIG COURTNEY signed the Magee Office Condo Deed of Trust on behalf Magee Como as its Manager.

126. When he signed the Magee Office Condo Deed of Trust on April 30, 2009, Defendant CRAIG COURTNEY knew, but failed to inform Plaintiff, that the second half installment for the 2008 property taxes for the Magee Office Condo (in the amount of $1,559.83) were past due and would be delinquent if not paid by 5:00 p.m. the next day, May 1, 2009. This was an intentional omission of a material fact.

127. When the Magee Office Condo Deed of Trust was signed on April 30, 2009, Defendant CRAIG COURTNEY had no intention of having Magee Como honor its obligation (under Section 4 of the Magee Office Condo Deed of Trust) to pay the property taxes for the Magee Office Condo before delinquent, but failed to inform Plaintiff of this. This was an intentional misrepresentation and omission of a material fact.

128. When he signed the Magee Office Condo Deed of Trust on April 30, 2009, Defendant CRAIG COURTNEY had no intention to cause Magee Como to honor its obligation (under Section 4 of the Magee Office Condo Deed of Trust) to pay the property taxes for the Magee Office Condo before delinquent, but failed to inform Plaintiff of this. This was an intentional misrepresentation and omission of a material

fact.

129. Other than second half 2008 property taxes which were paid in or about June 2012, Defendant CRAIG COURTNEY caused Magee Como to not pay any of the property taxes for the Magee Office Condo after entering into the Loan Agreement and the Magee Office Condo Deed of Trust in 2009.

130. The Magee Office Condo Deed of Trust and Defendant CRAIG COURTNEY's statements led Plaintiff SUSAN COURTNEY to believe that Magee Como was able to and would honor its obligation to pay the property taxes for the Magee Office Condo before delinquent, and that Defendant CRAIG COURTNEY would cause Magee Como to honor its obligation to pay the property taxes for the Magee Office Condo before delinquent. This was an intentional misrepresentation and omission of a material fact.

131. Plaintiff SUSAN COURTNEY relied on Defendant CRAIG COURTNEY, as her trusted professional advisor and brother, in believing that Magee Como was able to and would honor its obligation to pay the property taxes for the Magee Office Condo before delinquent, and that Defendant CRAIG COURTNEY would cause Magee Como to honor its obligation to pay the property taxes for the Magee Office Condo before delinquent.

132. Plaintiff SUSAN COURTNEY would not have made the 2009 Loan and Investment if Defendant CRAIG COURTNEY had told her that Magee Como might not, or might not be able to, honor its obligation to pay the property taxes for the Magee Office Condo before delinquent, or that Defendant CRAIG COURTNEY might not, or might not be able to, cause Magee Como to honor its obligation to pay the property taxes

for the Magee Office Condo before delinquent.

133. Defendant CRAIG COURTNEY and Magee Como never told Plaintiff that Magee Como didn't pay any property taxes for the Magee Office Condo other than a payment in June 2012 for the second half of 2008 taxes.

134. Defendant CRAIG COURTNEY and Magee Como never told Plaintiff that Magee Como was in default under the Magee Office Condo Deed of Trust on May 2, 2009 for failing to pay property taxes for the Magee Office Condo.

## FIRST CAUSE OF ACTION
### (11 U.S.C. § 523(a)(2)(A))
### (Extension of Credit by Plaintiff Obtained by False Pretenses, False Representations and Actual Fraud by CRAIG COURTNEY)

135. Plaintiff hereby realleges and incorporates by this reference all of the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

136. 11 U.S.C. § 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

137. To prove nondischargeablity under § 523(a)(2)(A), Plaintiff must establish five elements by a preponderance of the evidence: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct or acting with gross recklessness as to their truth; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or

conduct. *See, e.g.*, *In re Diamond,* 285 F.3d 822, 827 (9th Cir. 2002); *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman),* 234 F.3d 1081, 1085 (9th Cir. 2000); *In re Sabban,* 384 B.R. 1, 5 (9th Cir. BAP 2008).

138. In inducing Plaintiff to make the 2009 Loan and Investment from which he intended the marital community of Defendants CRAIG COURTNEY and JANINE COURTNEY to receive at least $105,000, Defendant CRAIG COURTNEY made the misrepresentations and fraudulent omissions, and engaged in the deceptive conduct, stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint.

139. Debtor CRAIG COURTNEY knew that the misrepresentations, omissions and deceptive conduct stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint were false or misleading or acted in reckless disregard for the truth.

140. Debtor CRAIG COURTNEY made the misrepresentations and fraudulent omissions, and engaged in the deceptive conduct, stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint with the intent to deceive Plaintiff.

141. Debtor CRAIG COURTNEY intended that Plaintiff would act upon the misrepresentations, omissions and deceptive conduct stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint and decide to make the 2009 Loan and Investment.

142. Plaintiff did not know the misrepresentations and omissions stated in ¶¶ 67, 70,

75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint were false or misleading.

143. The misrepresentations and omissions stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint were material and sufficiently important to influence Plaintiff's decision to make the 2009 Loan and Investment.

144. Plaintiff relied on the misrepresentations, omissions and deceptive conduct stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint in deciding to make the 2009 Loan and Investment. Plaintiff Susan Courtney would not have made the 2009 Loan and Investment if she had not been misled by the misrepresentations, omissions and deceptive conduct stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint.

145. Plaintiff's reliance on the misrepresentations, omissions and deceptive conduct stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint was justified.

146. As a direct and proximate result of Debtor CRAIG COURTNEY's misrepresentations, fraudulent omissions and deceptive conduct stated in ¶¶ 67, 70, 75, 76, 87, 88, 90, 93, 96, 109, 110, 115, 126-128, and 130 of this Complaint, Plaintiff was damaged in an amount exceeding the amount of the Craig and Janine Courtney Judgment.

147. Pursuant to 11 U.S.C. § 523(a)(2)(A), the remaining balance of the Craig and Janine Courtney Judgment is not dischargeable.

WHEREFORE, Plaintiff demands judgment denying the Debtors' discharge of

Plaintiff's right to recover the remaining balance of the Craig and Janine Courtney Judgment from Debtors, for Plaintiff's attorneys' fees and costs, and for such other relief as is just.

### SECOND CAUSE OF ACTION
### (11 U.S.C. § 523(a)(2)(A))
**(Receipt of Money from Plaintiff Obtained by CRAIG COURTNEY and JANINE COURTNEY by False Pretenses, False Representations and Actual Fraud)**

148. Plaintiff hereby realleges and incorporates by this reference all of the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

149. When inducing Plaintiff to make the 2009 Loan and Investment, Defendant CRAIG COURTNEY led Susan Courtney to believe that if Magee was not able to borrow the money, then Magee Como would lose the Magee Office Condo. This was an intentional misrepresentation of a material fact.

150. From before the time Plaintiff loaned the $137,500 to Magee Como, Defendant CRAIG COURTNEY planned to have Magee Como disburse at least $105,000 of those funds to Defendant CRAIG COURTNEY and JANINE COURTNEY as an alleged loan from the Levkowitz Trust, but did not disclose this to Plaintiff. This was an intentional misrepresentation and omission of a material fact.

151. Defendant CRAIG COURTNEY never disclosed to Plaintiff that Magee Como would disburse to CRAIG COURTNEY and JANINE COURTNEY any of the money that Plaintiff loaned Magee Como in April 2009. This was an intentional misrepresentation and omission of a material fact.

152. From May to July 2009 Magee Como disbursed to CRAIG COURTNEY and JANINE COURTNEY approximately $112,015.50 of the money that Plaintiff loaned

Magee Como in April 2009.

153. Debtor CRAIG COURTNEY knew that the misrepresentations, omissions and deceptive conduct stated in ¶¶ 149-151 of this Complaint were false or misleading or acted in reckless disregard for the truth.

154. Debtor CRAIG COURTNEY made the misrepresentations and fraudulent omissions, and engaged in the deceptive conduct, stated in ¶¶ 149-151 of this Complaint with the intent to deceive Plaintiff.

155. Debtor CRAIG COURTNEY intended that Plaintiff would act upon the misrepresentations, omissions and deceptive conduct stated in ¶¶ 149-151 of this Complaint and decide to make the 2009 Loan and Investment.

156. Plaintiff did not know the misrepresentations and omissions stated in ¶¶ 149-151 of this Complaint were false or misleading.

157. The misrepresentations and omissions stated in ¶¶ 149-151 of this Complaint were material and sufficiently important to influence Plaintiff's decision to make the 2009 Loan and Investment.

158. Plaintiff relied on the misrepresentations, omissions and deceptive conduct stated in ¶¶ 149-151 of this Complaint in deciding to make the 2009 Loan and Investment.

159. Plaintiff Susan Courtney would not have made the 2009 Loan and Investment if she had known that CRAIG COURTNEY planned to use the loan funds for CRAIG COURTNEY and JANINE COURTNEY.

160. Plaintiff's reliance on the misrepresentations, omissions and deceptive conduct

stated in ¶¶ 149-151 of this Complaint was justified.

161. As a direct and proximate result of Debtor CRAIG COURTNEY's misrepresentations, fraudulent omissions and deceptive conduct stated in ¶¶ 149-151 of this Complaint and the receipt by CRAIG COURTNEY and JANINE COURTNEY of approximately $112,015.50 from Plaintiff, Plaintiff was damaged in an amount exceeding the remaining balance of the Craig and Janine Courtney Judgment.

162. Pursuant to 11 U.S.C. § 523(a)(2)(A), the remaining balance of the Craig and Janine Courtney Judgment is not dischargeable.

WHEREFORE, Plaintiff demands judgment denying the Debtors' discharge of Plaintiff's right to recover the remaining balance of the Craig and Janine Courtney Judgment from Debtors, for Plaintiff's attorneys' fees and costs, and for such other relief as is just.

### THIRD CAUSE OF ACTION
### (11 U.S.C. § 523(a)(4))
### (Arizona Trust Fund Doctrine)

163. Plaintiff hereby realleges and incorporates by this reference all of the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

164. 11 U.S.C. § 523(a)(4) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

165. A defalcation of fiduciary duty can occur for purposes of 11 U.S.C. § 523(a)(4) if the fiduciary either misappropriated trust assets or failed to account for them.

166. Arizona law has adopted the trust fund doctrine ("Trust Fund Doctrine"). The

Trust Fund Doctrine provides that all assets of a company, immediately upon that company's insolvency, constitute a trust fund that exists for the benefit of the company's creditors.

167. Arizona's Trust Fund Doctrine implicates an express trust sufficient for purposes of the application of 11 U.S.C. § 523(a)(4).

168. When a company becomes insolvent, a fiduciary duty to creditors of the company is imposed on the insolvent company's directors and officers. That duty is to use the remaining company assets for the benefit of creditors.

169. A company's officers, directors and managers become liable to creditors under the Trust Fund Doctrine when a company transfers assets of the corporation to the officers, directors or managers while the company is insolvent.

170. For purposes of 11 U.S.C. § 523(a)(4), an express trust existed pursuant to Arizona's Trust Fund Doctrine over all funds and assets of Magee Como from the time Magee Como became insolvent.

171. For purposes of 11 U.S.C. § 523(a)(4), pursuant to Arizona's Trust Fund Doctrine, from the time Magee Como became insolvent, Defendant CRAIG COURTNEY (as the Managing Member of Magee Como) and Defendant JANINE COURTNEY (as a Member of Magee Como) were fiduciaries with the duty to use all Magee Como's funds and assets for the benefit of all the creditors of Magee Como and not to transfer Magee Como's funds or assets to or for the benefit of any of the managers or members of Magee Como.

172. Magee Como was insolvent at least from December 31, 2012 through January

31, 2015.

173. From December 31, 2012 through January 31, 2015, while Magee Como was insolvent, Defendant CRAIG COURTNEY had Magee Como transfer approximately $117,223.82 to Magee Como's managers and members (or companies owned by Magee Como's managers and members), including:

    a.  approximately $64,520.00 to Defendants CRAIG COURTNEY and JANINE COURTNEY; and

    b.  $21,803.82 to Courtney Realty.

174. Defendants CRAIG COURTNEY and JANINE COURTNEY both voted to have Magee Como transfer $21,803.82 to Courtney Realty while Magee Como was insolvent.

175. The transfer by Defendants CRAIG COURTNEY and/or JANINE COURTNEY of approximately $117,223.82 to Magee Como's managers and members (or companies owned by Magee Como's managers and members) while Magee Como was insolvent constitute fraud or defalcation while acting in a fiduciary capacity for purposes of 11 U.S.C. § 523(a)(4).

176. Defendants CRAIG COURTNEY and/or JANINE COURTNEY acted with wrongful intent in authorizing and directing the transfer of approximately $117,223.82 to Magee Como's managers and members (or companies owned by Magee Como's managers and members) while Magee Como was insolvent.

27.  Plaintiff has been damaged in at least the amount of the remaining balance of the Craig and Janine Courtney Judgment as a direct and proximate result of the transfer by Defendants CRAIG COURTNEY and/or JANINE COURTNEY of approximately

$117,223.82 to Magee Como's managers and members (or companies owned by Magee Como's managers and members) while Magee Como was insolvent.

28.    Pursuant to 11 U.S.C. § 523(a)(4), Plaintiff's claims for damages against Debtors for fraud or defalcation while acting in a fiduciary capacity are not dischargeable.

WHEREFORE, Plaintiff demands judgment denying the Debtors' discharge of Plaintiff's right to recover the remaining balance of the Craig and Janine Courtney Judgment from Debtors, for Plaintiff's attorneys' fees and costs, and for such other relief as is just.

### FOURTH CAUSE OF ACTION
### (11 U.S.C. § 523(a)(4))
### (Misappropriation of Lammers Rent)

177. Plaintiff hereby realleges and incorporates by this reference all of the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

178. 11 U.S.C. § 523(a)(4) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . .
>     (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

179. A defalcation of fiduciary duty can occur for purposes of 11 U.S.C. § 523(a)(4) if the fiduciary either misappropriated trust assets or failed to account for them.

180. Under the Magee Office Condo Deed of Trust, Magee Como (as Trustor) irrevocably granted and conveyed to the trustee of the Magee Office Condo Deed of Trust, in trust for the benefit of the beneficiaries of the Magee Office Condo Deed of Trust, all the leases, rents, issues, profits and income from the Magee Office Condo (the "Magee Como Condo Income").

181. In addition, under Section 10 of the Magee Office Condo Deed of Trust, Magee Como (as Trustor) gave to and conferred upon Plaintiff (as "Beneficiary") as additional security the right, power and authority to collect and apply all the Magee Office Condo Income after any default by Trustor either in payment of any indebtedness secured by the Magee Office Condo Deed of Trust or in performance of any agreement under the Magee Office Condo Deed of Trust.

182. Section 10 of the Magee Office Condo Deed of Trust reserved to Magee Como (as Trustor) the right to collect and retain the Magee Office Condo Income only "prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder."

183. The second half 2008 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on May 1, 2009.

184. Magee Como also defaulted on its obligation (under Section 4 of the Magee Office Condo Deed of Trust) to pay the following property taxes before delinquent:

   a. First half 2009 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on November 1, 2009.

   b. Second half 2009 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on May 1, 2010.

   c. First half 2010 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on November 1, 2010.

   d. Second half 2010 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on May 1, 2011.

   e. First half 2011 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on November 1, 2011.

f. Second half 2011 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on May 1, 2012.

g. First half 2012 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on November 1, 2012.

h. Second half 2012 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on May 1, 2013.

i. First half 2013 property taxes for the Magee Office Condo were unpaid and became delinquent at 5:01 p.m. on November 1, 2013.

185. On April 30, 2012, Magee Como defaulted on its obligation to pay the indebtedness secured by the Magee Office Condo Deed of Trust.

186. As of 5:01 p.m. on May 1, 2009, Magee Como was in default of its obligation (under Section 4 of the Magee Office Condo Deed of Trust) to pay property taxes before delinquent.

187. As of 5:01 p.m. on May 1, 2009, when Magee Como defaulted on its obligation (under Section 4 of the Magee Office Condo Deed of Trust) to pay property taxes before delinquent, Magee Como (as Trustor) no longer had the right to collect and retain the Magee Office Condo Income unless and until all defaults under the Magee Office Condo Deed of Trust were cured.

188. Since the default at 5:01 p.m. on May 1, 2009 and until all defaults under the Magee Office Condo Deed of Trust were cured, Magee Como was required to use all the Magee Office Condo Income to cure all defaults under the Magee Office Condo Deed of Trust or to deliver such income to the Magee Office Condo Deed of Trust trustee or beneficiaries to be used to cure all defaults under the Magee Office Condo Deed of Trust.

189. After the default at 5:01 p.m. on May 1, 2009, Defendant CRAIG COURTNEY directed Magee Como, its employees and/or agents to collect, retain and use Magee Office Condo Income in violation of the Magee Office Condo Deed of Trust.

190. Upon information and belief, in or about 2010, Magee Como began to lease all or part of the Magee Office Condo to (Lammers Consulting Inc. ("Lammers")) and collect rent from Lammers.

191. Upon information and belief, Defendant CRAIG COURTNEY directed Magee Como, its employees and/or agents to collect and retain Magee Office Condo Income (rent) from Lammers in 2010, 2011 and 2012.

192. Upon information and belief, Defendant CRAIG COURTNEY directed Magee Como, its employees and/or agents to use such Magee Office Condo Income for purposes other than paying property taxes for the Magee Office Condo and other than paying Magee Como's obligations under the Magee Office Condo Deed of Trust.

193. Upon information and belief, on or about December 2, 2011, Defendant CRAIG COURTNEY caused Magee Como to enter into a Payment Agreement with Lammers purporting to release Lammers from its obligation to pay Magee Como delinquent rent in the amount of $10,745.18 (the "2011 Delinquent Rent") if Lammers executed a promissory note payable to Defendant CRAIG COURTNEY in the amount of $10,745.18 to be secured by a lien on a 2006 Toyota Solar.

194. Upon information and belief, in or about December 2011, Lammers executed a promissory note payable to Defendant CRAIG COURTNEY in the amount of $10,745.18 secured by a lien on a 2006 Toyota Solar (the "$10,745.18 Promissory

Note") and Defendant CRAIG COURTNEY caused Magee Como to release Lammers from its obligation to pay Magee Como the 2011 Delinquent Rent.

195. In or around late April 2012, Plaintiff's lawyer demanded that Magee pay Plaintiff half the rent from the Magee Office Condo pursuant to the Magee Office Condo Deed of Trust's assignment of rents clause.

196. Plaintiff's lawyer gave notice exercising the assignment of rents clause promptly at the time of the first default Plaintiff was aware of (i.e., the failure to pay the balance due on April 30, 2012).

197. In an April 30, 2012 email, Defendant CRAIG COURTNEY acknowledged that Plaintiff had demanded to receive half the rent from the Magee Office Condo pursuant to the assignment of rents clause in the Magee Office Condo Deed of Trust.

198. After April 30, 2012, Defendant CRAIG COURTNEY had Magee Como continue to collect and retain approximately $17,499.42 rent from the Magee Office Condo (after deduction of .5% rental tax).

199. In and after July 2012, Defendants CRAIG COURTNEY and JANINE COURTNEY received and retained approximately $8,503.28 of delinquent rent payments from Lammers under the $10,745.18 Promissory Note.

200. By letter dated July 10, 2012, counsel for Plaintiff SUSAN COURTNEY notified the tenant of the Magee Office Condo (Lammers), Defendant CRAIG COURTNEY and Magee Como that Lammers should thereafter make 50% of all rent payments to Plaintiff SUSAN COURTNEY pursuant to the Magee Office Condo Deed of Trust.

201. Upon information and belief, after learning of Plaintiff SUSAN COURTNEY's July 10, 2012 demand to receive the rent from Lammers, Defendant CRAIG COURTNEY told the tenant (Lammers) to continue paying all rent to Defendant CRAIG COURTNEY and Magee Como.

202. Upon information and belief, Defendant CRAIG COURTNEY and Magee Como continued to receive rent payments from the tenant (Lammers) after July 10, 2012.

203. In April 2013, Lammers paid to Plaintiff SUSAN COURTNEY the amount of $7,160.00 (which upon information and belief was ½ of the rent for the Magee Office Condo for 5 months).

204. The Craig and Janine Courtney Judgment debt is based on fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny with respect to 50% of the following amounts:

    a.  After April 30, 2012, Defendant CRAIG COURTNEY had Magee Como continue to collect and retain approximately $17,499.42 rent from the Magee Office Condo (after deduction of .5% rental tax); and

    b.  In and after July 2012, Defendants CRAIG COURTNEY and JANINE COURTNEY received and retained approximately $8,503.28 of delinquent rent payments from Lammers under the $10,745.18 Promissory Note.

205. Pursuant to 11 U.S.C. § 523(a)(4), Plaintiff's claims for damages against Debtors for fraud or defalcation while acting in a fiduciary capacity are not dischargeable.

WHEREFORE, Plaintiff demands judgment denying the Debtors' discharge of Plaintiff's right to recover at least $13,00135 (50% of $17,499.42 plus $8,503.28) of the

remaining balance of the Craig and Janine Courtney Judgment from Debtors, for

Plaintiff's attorneys' fees and costs, and for such other relief as is just.

## FIFTH CAUSE OF ACTION
## (11 U.S.C. § 523(a)(19))
## (Debt based on settlement of securities law violation)

206. Plaintiff hereby realleges and incorporates by this reference all of the allegations

made in the preceding paragraphs of this Complaint as though fully set forth herein.

207. 11 U.S.C. § 523(a)(19) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b)
> of this title does not discharge an individual debtor from any debt-- . . .
>> (19) that
>> (A) is for--
>>> (i) the violation of any of the Federal securities laws (as that term is
>>> defined in section 3(a)(47) of the Securities Exchange Act of 1934),
>>> any of the State securities laws, or any regulation or order issued under
>>> such Federal or State securities laws; or
>>> (ii) common law fraud, deceit, or manipulation in connection with the
>>> purchase or sale of any security; and
>>
>> (B) results, before, on, or after the date on which the petition was filed,
>> from--
>>> (i) any judgment, order, consent order, or decree entered in any
>>> Federal or State judicial or administrative proceeding;
>>> (ii) any settlement agreement entered into by the debtor; or
>>> (iii) any court or administrative order for any damages, fine, penalty,
>>> citation, restitutionary payment, disgorgement payment, attorney fee,
>>> cost, or other payment owed by the debtor.

208. Plaintiff's claims against Defendants CRAIG COURTNEY and JANINE

COURTNEY in the Pima County Case included securities fraud claims for violations of

A.R.S. § 44-1991 and § 44-1999(B).

209. In addition to a loan, the 2009 Loan and Investment involved an investment of

money by Plaintiff for profit in Defendant MAGEE COMO.

210. Plaintiff had an expectation of profits from the enterprise and was induced to make the 2009 Loan and Investment by the prospect of the return on the investment in addition to the repayment of the loan.

211. Recital B of the Loan Agreement states: "Borrower has agreed to accept the Lender's financing and provide Lender additional benefits, more particularly described below, over and above repayment of the Loan."

212. Recital C of the Loan Agreement states that the agreement defines the parties' rights for both the "financing" and the "other benefits."

213. Section 4 of the Loan Agreement contains the parties' agreement that in addition to receiving repayment of the $137,5000 plus interest, Plaintiff SUSAN COURTNEY would receive a share of the "Profits" from the future sale of the Property (20% of the Profits for a sale on or before April 30, 2010, increasing to 25% of the Profits for a sale between May 1, 2010 and April 30, 2011, and then 30% of the Profits for a sale after April 30, 2011).

214. The profits were to be derived from the efforts of Magee Como and Defendant CRAIG COURTNEY and Magee Como and Defendant CRAIG COURTNEY were required to manage the investment for the benefit of Plaintiff.

215. Plaintiff's 2009 Loan and Investment in Magee Como for a share of the "Profits" from the future sale of the Property was a security (the "Security").

216. As described in this Complaint (including in the First Cause of Action), Defendant CRAIG COURTNEY committed common law fraud, deceit, or manipulation in connection with the sale of the 2009 Loan and Investment to Plaintiff.

217. The foregoing securities law violation resulted in the Pima County Superior Court's entry of the Craig and Janine Courtney Judgment and the Settlement Agreement entered into between Plaintiff and Defendants CRAIG COURTNEY and JANINE COURTNEY before the bankruptcy petition was filed.

218. Pursuant to 11 U.S.C. § 523(a)(19), the Craig and Janine Courtney Judgment is not dischargeable, because it resulted from common law fraud, deceit, or manipulation by Defendant CRAIG COURTNEY in connection with the sale of the 2009 Loan and Investment to Plaintiff.

WHEREFORE, Plaintiff demands judgment denying the Debtors' discharge of Plaintiff's right to recover the remaining balance of the Craig and Janine Courtney Judgment from Debtors, for Plaintiff's attorneys' fees and costs, and for such other relief as is just.

DATED this 24th day of June, 2019.

RAVEN, CLANCY & McDONAGH, P.C.

By  s/ Christopher S. McDonagh
    Christopher S. McDonagh
    Attorneys for SUSAN S. COURTNEY

Original filed this 24th day of June, 2019, with:

Clerk of the United States Bankruptcy Court
230 N. 1st Avenue, Ste. 101
Phoenix, Arizona 85003

Copy of the foregoing electronically transmitted this 24th day of June, 2019 through the Bankruptcy Court's ECF system to all parties registered for electronic service in this case through the Bankruptcy Court's ECF system.

By  s/ Christopher S. McDonagh
    Christopher S. McDonagh